UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL E. NEWHOUSE,

              Petitioner,

                                         Case No. 19-cv-345-pp

   v.

DAVID BETH,

              Respondent.

---

**ORDER CONSTRUING PETITIONER'S "APPEAL OF *HABEAS CORPUS*" AS OBJECTION TO REPORT AND RECOMMENDATION (DKT. NO. 8), OVERRULING OBJECTION, ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 7), DENYING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

---

On March 7, 2019, the petitioner, representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2241 challenging his pretrial detention in the Kenosha County Jail in Kenosha County Case No. 16CF1420. Dkt. No. 1 at 1-4. On March 22, 2019, Magistrate Judge William Duffin granted the petitioner's motion to proceed without prepaying the filing fee, screened the petition and recommended that this court deny it. Dkt. No. 7. Judge Duffin's order indicated that written objections to his report and recommendation were due within fourteen days of service of his order on the petitioner. Id. at 3.

On April 11, 2019, the court received from the petitioner a document titled "Appeal of Habeas Corpus." Dkt. No. 8. The first sentence of this document states that "Magistrate Judge William E. Duffin did not view the

1

main date of both Wisconsin and United Sates Constitutional Law violations which by words of conduct from Judge Bruce E. Schroeder on 2/4/19 which exude constitutional violations with bias and prejudice." Id. at 1. The court construes this document as an objection to Judge Duffin's report and recommendation.

Judge Duffin did not commit clear error in recommending that the court dismiss the petition. This order overrules the petitioner's objection, adopts the recommendation for dismissal with an explanation of this court's basis for dismissal, dismisses the petition and declines to issue a certificate of appealability.

## I.      Procedural and Factual History

A.      Allegations in the Petition

The petition, filed March 7, 2019, is hard to follow. The petitioner completed the section of the form petition for individuals who are challenging their illegal pretrial detention. Dkt. No. 1 at 4. He described the charges he faced as follows:

> Opperating a Vehicle without Owners Consent *This Court is going to chapter [illegible] by miss information + lyes w/no Effective defense Counsel No Substantive due process Rights or Constitutional protection.

Id. When asked for the date of arrest, the petitioner wrote:

> Conflict of Interest (Personal) Custody began 6/23/16 in Illinois District Attorney Zapf initiated Case with "Special Prosecutor" 12/27/16. Zapf is to have No Involvement with Defendant.

Id.

2

On page 2, where the form asks petitioners to mark a box for the type of decision or action they are challenging, the petitioner marked the box for "other," and described the "case or decision involved" as follows:

> Denial of WI. and U.S. Constitutional Rights and Protections ie . . . effective counsel <u>for</u> the Defendant. Arbitrary application of Law denies Substantitive due Process for any defense So Admitted by Judge Schroeder 2/4/19 on the Record.

Dkt. No. 1 at 2. In the space provided to describe the "[d]ate of decision or action," the petitioner wrote, "denial of Substantive Due Process, Effective Counsel to work for the Defendant 8/19/18 on going 2/4/18 Attorney dismissed by client on Record. Also denied." <u>Id.</u> When asked if there was a hearing of any kind, the petitioner marked the "Yes" box, and wrote:

> This case is 2½+ years old The Petitioner is detained without legal papers or contact with Attorney whom on 2/4/19 I clearly stated ineffective counsel <u>is</u> <u>not</u> vested in my Best Interest Since August 20, there have been no Evidentiary Hearings or Discovery shared with petitioner as he has requested multiple times. 1st Attorney Ward drain $7500 [illegible] resources and Judge Schroeder Ggrilled me as to where my money is from.

<u>Id.</u>

When asked to describe the "First Hearing," the petitioner provided a date of February 4, 2019, and wrote:

> Petitioner had to go on Record stating Attorney Bihler was NOT vested in his best interest, also the court has not allowed and of my turn of events on the table, asking <u>why my constitutional rights are</u> <u>not</u> protected Judge Schroeder responded, "You have a History, <u>SHUT</u> <u>UP</u> your $2000 bond is revoked and is now $100,000.

<u>Id.</u> at 2. When asked to describe the "Second Hearing," the petitioner provided a date of February 20, 2019, along with the notation, "(psych eval challenge, I

3

ask for second, to see Truth!).” Id. In the space for describing the result of the hearing, the petitioner wrote:

> I again asked Attorney Bihler for the States Discovery to which he lies saying he gave me and Added I never signed for Illinois. Attorney Bihler set up a psych eval once I stated for him to stop quizing [sic] me over information given twice over (seriously) the Attorney spoke as if I were an adolescent.

Id. Next to the word “Illinois,” the petitioner wrote and circled the word “False.” Id.

In the space provided for “future hearings,” the petitioner wrote “3/13/19 status challenge (w/no Representation).” Id. The petitioner struck through the typed language on the form that read “If no, and you are an immigration detainee, state why you are not in removal proceedings,” and wrote:

> The petitioner has requested New Representation to work for him as Attorney Bihler has a main objective to breach Attorney Client Privilege also Stating I had No Right to demand the Court Show by Evidence to Justify Revocating a $2000 then Increase to $100,000 Because I had to state on Record the Court is not Fair or Impartial My Constitutional Rights are denied Affirmed.

Id.

In the “Grounds for Relief” section of the petition, the petitioner listed four grounds. For Ground One, he asserted that on February 4, 2019, he “had to state on record issue of defense counsel not vested in his best interest, also my constitutional rights and protections are being denied by Branch #3 court. Detained for so stating.” Dkt. No. 1 at 10. In the “supporting facts” for this ground, the petitioner discussed “Attorney Bihler” being given facts to dispute a report from the Lake County, Illinois Sheriff's Department, and asserted that

4

Attorney Bihler built a case against him and breached attorney-client privilege on the record to the court. Id. He asserted that a deputy sheriff "hauled [him] out" for saying as much and for trying to protect his rights. Id.

Under Ground Two, the petitioner wrote "that through out proceedings Judge Schroeder has not been fair or impartial, he has shown prejudice, admits on record 2/4/19 denial of rights." Id. The petitioner complained that he had hired "Attorney Ward" in January 2017, and that Ward had "drained all of Petitioners Funds $7500." Id. The petitioner stated that Ward never gave him discovery "in Ill. OR Wisconsin." Id. He stated that after fourteen months he was transferred from Lake County, Illinois because he had hired an Illinois attorney who gave him discovery, indicating that he had "seen immediately" that his exculpatory evidence—all digital security footage booking corridor seg corridor and body cam requested was lost." Id. at 11. The petitioner then alleged that Judge Schroeder "persecuted" him about where his money had come from; while the petitioner argues that it was not the court's right to ask about this, he explains that he got the money from the estate of his brother, who died in 2014 on the petitioner's birthday. Id. The petitioner says that Ward withdrew after the petitioner told Ward he was having complications and nearly died from Hepatitis C. Id.

Under Ground Three, the petitioner wrote that "[t]he petitioner files motion for ineffective counsel and $1000.00 withheld. Judge Schroeder conveys his personal opinion of representation (bias) denies motion, denies return of $1000. Revokes bond after motion." Id. at 11. In the facts supporting

5

this ground, the petitioner mentions yet another attorney. He asserts ineffective assistance of counsel, arguing that he had no "face to face, other than court, no discoveries," and says that "Attorney Barth" told him to go get discovery himself. Id. He says that he needed to see the state's discovery and that Attorney Barth would not give it to him; he then discusses his need to move forward, medical treatment he needs, and his priorities for his health. Id.

Under Ground Four, the petitioner stated that "[i]t is more likely than not, my gut instinct is correct because everything is of the record—fact DA Robert Zapf on 12/27/16 by conflict of interest forwards to 'Special Prosecutor.'" Id. at 12. In the facts supporting this ground, the petitioner asserts that Robert Zapf "has a lifetime no contact as his family member got a free pass after coming after me with a gun in 1982 for a charge in 1977 (completed in 1982)." Id. at 12. The petitioner asserts that the "special prosecution" was a "personal vindication of which time has been served, all needs met. (Bias and Prejudice thru life)." Id. The petitioner asserts that he was denied substantive due process and that, as shown on the February 4, 2019 record, he had a judge and two lawyers working against him and that he was punished for knowing his basic rights and filing motions and complaints. Id.

As relief, the petitioner asked the court to investigate the record, vacate the charges with prejudice and "Investigate All improprieties since 12/27/2016 Robert Zapf Schroeders former Boss." Id. In two additional pages attached to the petition, the petitioner alleged that Judge Schroeder committed him to the Mendota Mental Health Institute on February 4, 2019 because the petitioner

6

tried to vindicate his rights, and that "Psychologist Rawski" told him that the judge could not commit the petitioner without going through Rawski. Id. at 15. He asked for a "second professional opinion." Id. at 16. He alleged that on August 9, 2018, Schroeder committed him to Mendota for filing ineffective assistance of counsel "and to return $1000." Id.

B.     Judge Duffin's Recommendation

In his March 22, 2019 recommendation, Judge Duffin explained that the petitioner had alleged "ineffective assistance by his attorney, Michael Bihler, and prejudice on behalf of the presiding judge, the Honorable Bruce Schroeder." Dkt. No. 7 at 1. Judge Duffin first explained that "exhaustion of state court remedies is not explicitly required by § 2241(c)(3) like it is for a petition under § 2254," but noted that in the interest of comity, courts had applied the exhaustion doctrine in that context. Id. at 2. He explained that to "exhaust" one's state remedies, a petitioner must use all available state procedures before bringing a claim to federal court. Id. at 2-3 (quoting Blanck v. Waukesha Cty., 48 F. Supp.2d 859, 860 (E.D. Wis. 1999)). Judge Duffin stated that his review of the public docket for the petitioner's state case showed that "on March 13, 2019, the circuit court denied [the petitioner's] motion to have Attorney Bihler removed from the case." Id. at 3. He noted that the court had "stated that it would not address [the petitioner's] other motions—Motion for Recusal of Circuit Court Judge Schroeder and Motion to Dismiss Based on Illegal or Unconstitutional Activity—because they were not supported by defense counsel." Id. Judge Duffin indicated that a review of the public records

7

for the Wisconsin Court of Appeals and the Wisconsin Supreme Court indicated that the petitioner had not appealed the circuit court's denial of his motions, and therefore "ha[d] not exhausted all of his state court remedies." Id. He recommended that this court deny the petition on that basis. Id.

At the end of the report and recommendation, Judge Duffin directed the petitioner to 28 U.S.C. §636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2), which required the petitioner to file written objections "within fourteen days of service of this recommendation." Id. at 3. Judge Duffin's order warned the petitioner that "[f]ailure to file a timely objection with the district court shall result in a waiver of your right to appeal." Id.

C.    The Petitioner's Objection

On April 11, 2019, the court received from the petitioner the "Appeal of Habeas Corpus." Dkt. No. 8. The petitioner dated this filing April 8, 2019—seventeen days after Judge Duffin issued the report and recommendation. Id. at 9. Aside from arguing that "Magistrate Judge William E. Duffin did not view the main date of both Wisconsin and United States Constitutional Law Violations," the objection does not mention Judge Duffin's report or any of the conclusions and recommendations in it. Id. at 1-9. The objection reiterates the allegations from the petition. Id. It concludes with the petitioner opining that "there is just cause to vacate case #16-CR-1420, by the transcribed minutes, asking this Court to dismiss with prejudice." Id. at 9.

D.    The Chronology of Events

Because the petition is difficult to follow, the court reviewed the public docket for the case the petitioner cited, State v. Michael E. Newhouse, Case No. 2016CF001420 (Kenosha County Circuit Court), available at https://wcca.wicourts.gov. That docket gives context to the allegations in the petition. The docket shows that on December 29, 2016, the State filed a complaint against the petitioner in Kenosha County Circuit Court, charging him with one count of driving or operating a vehicle without consent in violation of Wis. Stat. § 943.23(3). See State v. Newhouse, Kenosha County Case No. 16CF1420 (available at https://wcca.wicourts.gov). As of January 27, 2017, the petitioner had retained Attorney John Ward. At a hearing on August 8, 2017, the court set a cash bond of $1,000. Id. The petitioner posted that bond the same day. Id.

On September 14, 2017—while represented by Attorney Ward—the petitioner entered pleas of not guilty and not guilty by reason of mental defect. Id. Two months later, at a November 29, 2017 hearing before Circuit Court Judge Bruce E. Schroeder, Attorney Ward filed a motion for an evaluation of the petitioner's mental capacity. Id. The court required counsel to file an affidavit of indigency within seven days, "along w/proposed order for Dr. Thompson." Id. On December 8, 2017, the court issued an order appointing a Dr. Thompson to evaluate the petitioner's mental capacity. Id.

On January 26, 2018, however, Attorney Ward filed a motion to withdraw. Id. Just over three weeks later, on February 19, 2018, Dr. Thompson

9

filed his report. Id. At a hearing on February 23, 2018, Attorney Ward reiterated his request to withdraw, the petitioner indicated he wanted to find out if he qualified for appointed counsel and the court adjourned the hearing. Id.

At the adjourned hearing on March 3, 2018, Attorney Michael Barth appeared, having just been appointed. Id. At a March 21, 2018 hearing, Attorney Barth appeared but the petitioner did not, so the court issued a bench warrant and imposed a $2,000 bond, forfeiting the prior $1,000 cash bond. Id. The warrant was canceled March 22, 2018 when the petitioner appeared in custody. Id. The petitioner posted the $2,000 bond on March 30, 2018. Id.

On April 11, 2018, represented by Attorney Barth, the petitioner withdrew the "NGI" plea and asked for a trial date. Id. He also asked for the bond to be amended; the court reduced the bond to $1,500. Id. The court scheduled a final pretrial conference for May 24, 2018 and a trial for June 11, 2018. Id. On August 3, 2018, Attorney Barth filed a motion challenging the petitioner's competency. Id. At a hearing on August 9, 2018, the petitioner objected to the motion; the petitioner argued that he was competent to proceed and moved for new counsel. The court ordered a competency evaluation of the petitioner. Id.

On September 5, 2018, the petitioner—on his own—filed a motion asking Judge Schroeder to recuse himself, arguing that Attorney Barth was ineffective and asking for dismissal of the case. Id. Two days later, Robert Rawski of the Wisconsin Forensic Unit filed his examining psychologist's report; at a hearing

10

three days later, the court found the petitioner competent based on that report and the agreement of all the parties (including the petitioner). Id. Attorney Barth moved to withdraw and the court granted that motion. Id.

Attorney Doug Bihler was appointed on October 16, 2018. Id. The court scheduled a final pretrial conference for January 10, 2019 and a jury trial for January 28, 2019. Id. At a hearing on February 4, 2019—the hearing the petitioner mentions repeatedly in his federal *habeas* petition—Attorney Bihler filed a motion for a competency evaluation; the docket indicates that the petitioner "bec[a]me agitated" during this hearing, and Judge Schroeder ordered an inpatient competency evaluation. Id. Judge Schroeder also amended the bond to $100,000 (from $1,500) and ordered the petitioner taken into custody. Id.

On February 20, 2019, the competency report Attorney Bihler had requested and Judge Schroder had ordered was filed. Id. At a hearing that same day, the State and Attorney Bihler concurred with the findings in the report, while the petitioner contested them. Judge Schroeder scheduled a competency hearing for March 13, 2019 and ordered that Dr. Rawski could testify by phone. Id.

The petitioner filed this federal petition on March 7, 2019—eight days after that hearing and about a week before the scheduled competency hearing (presumably the "future hearing" the petitioner described in his federal *habeas* petition). So at the time he filed his federal petition, the petitioner's criminal

case was in progress, with a competency hearing scheduled for the following week.

At the March 13, 2019 competency hearing, Judge Schroeder denied the petitioner's motion to have Attorney Bihler removed from the case and stated that he would not address the petitioner's other motions because they were not supported by counsel. Id. The court took testimony, including testimony from Dr. Rawski by phone, and found that the defendant was not competent to proceed but was likely become competent within the time prescribed by law. Id. The court suspended the case and committed the defendant to the Department of Health Services. Id.

Nine days after that hearing, Judge Duffin issued his report and recommendation in this federal case. There is no indication that Judge Duffin knew about the March 13, 2019 hearing or knew that the petitioner had been committed to the Department of Health Services as incompetent to proceed in the state criminal case.

The court received the petitioner's objection to Judge Duffin's ruling on April 11, 2019. Dkt. No. 8. The petitioner did not put an address at the end of the objection. Id. at 8. On page 8 of the nine-page document is the following statement: "Persons confined to a State Mental Hospital/Institution under §51.20, 51.37, 971.14, 971.17 and 957.60 are being subjected to punishment within the meaning of cruel and unusual punishment," but it does not appear that the petitioner was confined in a state mental hospital at this time. The objection provided more information about Lake County, Illinois. The objection

mentioned an event on June 22, 2016, in which the petitioner asserted that two assailants "smashed" his skull into a "coin opp mechanism (putting [the petitioner] in fight or flight)." Id. at 2. The petitioner says that because he was suffering from neuropathy resulting from Hepatitis C, he was too weak to ward off his attackers; he asserts that he hired Attorney Ward "to file a writ to get his client treatment as this most aggressive strain of HepC3A was rapidly deteriorating the body." Id. The objection complained that Ward did not obtain "security footage and body cam where Lake County Sheriffs stripped the Petitioner naked, hog tied him and dragged him naked along an abrasive floor also slambing his head into the cinder block walls multiple times . . . putting him in a ten day blackout." Id. There appears to have been a competency evaluation in Illinois, which the petitioner says he passed. Id. at 2-3.

The remainder of the objection went into more detail about the petitioner's criticisms of Attorneys Barth and Bihler. Id. at 3-4. It also alleged that the petitioner was allergic to various items and needed a special diet, and asserted that Dr. Rawski was informed of this fact, yet continued to question the petitioner "loud and voicturious, lunging out of his seat towards the Petitioner." Id. at 4-5. The petitioner alleged that being in the Kenosha County Jail "without medication physical therapy and/or chiropractic adjustments" exacerbated a number of medical problems. Id. at 5. He asserted that he "deserve[d] a second opinion" because the allergic reactions triggered his neuropathy. Id. He alleged that at the February 4, 2019, Attorney Bihler gave a

version of court proceeding that was "bias[ed]" and argued that Bihler's behavior was not in his best interest. Id. at 6.

The objection asserted that the "main date to address" was February 4, 2019; he says that he had to say something on the record that day because "at no time had [he] been acknowledged or on record for [his] defense" and that "proceedings were taking place as if [he] was non-existant or moving forward without any of [his] input." Id. at 7. The petitioner explained that at that February 4, 2019 hearing, although he was nervous, he acted "responsibly with assertive aggressiveness and focused." Id. He says he told the judge that Attorney Bihler was not vested in his best interest and that he had rights as a citizen; he says he asked why his rights were not being met by the court that that it seemed "more an orchestration of a one sided story for the State." Id. The petitioner asserts that Judge Schroeder responded, "You have a history! Shut up . . . Your $2000 Bond is Revoked and is now $100,000." Id. He says Judge Schroeder then committed him to Mendota, "the same as on 8/9/18 for filing pro-se motions without any evaluations." Id. He says that the judge then yelled at two Kenosha County Sheriff's deputies to get the petitioner out, and he says the deputies nearly smashed his face into a doorjamb. Id. at 7-8. He says that as this was happening, he could hear "Attorney Bihler giving a tell all, breaching attorney client privilege as it was Attorney Bihler's intent to conduct [the petitioner's] defense as he deemed fit." Id. at 8.

The objection asserted that nearly three years had passed, "14 months unaccredited (Ill.) without treatment in Illinois," and said that he had suffered

physically and psychologically." Id. at 8-9. He asserts that the courts did not take into consideration the fact that he should have been focusing on his medical needs and not legal procedures or violations of his rights. Id. at 9. He expressed the hope that "more light" would be shed on "the ongoing bias and prejudice which exist throughout the interim of three years." Id.

On April 29, 2019, the clerk's office received a letter from the petitioner. Dkt. No. 9. The return address was "KCDC/HE-11B, 4777 88th Avenue, Kenosha, WI 53144"—the Kenosha County Detention Center. Id. The letter advised the clerk of court that the petitioner had mailed his objection on March 9, 2019 and asked the clerk for a copy of the original petition and the objection. Id. The same day, the clerk's office sent the petitioner a letter at KCDC, advising him of the fee for copies. Dkt. No. 9-1. That letter was returned to the court on May 10, 2019 with the notation "not in custody." Dkt. No. 10. The Kenosha County Sheriff's Department Inmate Inquiry web page shows that on May 1, 2019, the petitioner was released from the Sheriff's custody. http://inmate.kenoshajs.org/NewWorld.InmateInquiry/kenosha/Inmate/Detail/-107347.

On May 15, 2019, the court received a letter from the petitioner, complaining that he had asked the clerk's office for copies and had not received them and alleging that the Kenosha County Detention Center was interfering with his mail. Dkt. No. 11. The letter said, "I'm now relocated and would appreciate proper notification and copies of petitions." Id. The petitioner dated the letter May 13, 2019. Id. Although the May 13, 2019 letter indicated that the

petitioner was "relocated," the petitioner did not file a change-of-address notification with the court. The May 13 letter listed the petitioner's return address as 301 Troy Drive, Madison, WI 53704. Dkt. No. 11. That is the address of the Mendota Mental Health Institute, a facility that "primarily serves men in need of court-ordered mental health competency evaluations, treatment to competency services, and treatment as the result of being found not guilty of criminal activity by reason of mental illness." https://www.dhs.wisconsin.gov/mmhi/index.htm. The state court docket shows that on May 15, 2019, the petitioner's address was changed to the address for Mendota Mental Health. https://wcca.wicourts.gov/.

On June 3, 2019, the court received another letter from the petitioner; it was dated May 31, 2019 and bore the Mendota return address. Dkt. No. 12. The letter alleged that the petitioner's mail from Kenosha County had been re-routed—he was under the impression that his objection had not been filed with the court. Id. at 1. The petitioner asked for "special assistance," reiterating that he had scoliosis and that he had certain degenerative neck and spine conditions and was sixty-one years old.[1] Id. at 2. He stated that he was not receiving relief for these various conditions. Id. The petitioner explained various health conditions he had, injuries he had suffered at other jails, complaints he had about doctors who'd examined him and allegations of deliberate indifference. Id. at 2-6. The petitioner ended the letter by saying, "Could you

---

[1] The petitioner had mentioned these conditions and others in his objection to Judge Duffin's ruling. Dkt. No. 8.

please help me get past this, interview me or something?" Id. at 6. The next six pages were a reiteration of the claims in the petition. Id. at 7-12. The petitioner also attached some statutes and some pages from the state-court docket. Dkt. No. 12-1.

On June 7, 2019—four days after it received the previous letter—the court received another letter from the petitioner. Dkt. No. 13. The petitioner had dated this letter June 3 and it bore the Mendota return address. Id. at 1. The petitioner stated that the letter was a "supplemental." Id. This letter made more allegations about the diet the petitioner had requested but been denied, more allegations about the petitioner's health condition and allegations about the medication he was being given. Id. at 1-2. He ended this letter by saying, "Please help me out here. I'm seriously in fear of my safety they like to beat people down here also, Thank you Mike." Id. at 2.

That was the last communication the court received from the petitioner. But activity continued in the state case. On June 7, 2019—the same day the court received the petitioner's June 3, 2019 letter—the petitioner filed a petition for a supervisory writ with the Wisconsin Supreme Court. Newhouse v. Circuit Court for Kenosha County, Case No. 2019AP001053-W, available at https://wscca.wicourts.gov/. A "supervisory writ" is "a blending of the writ of mandamus and the writ of prohibition." State ex rel. CityDeck Landing LLC v. Circuit Court for Brown Cty., 385 Wis.2d 516, 535 (Wis. 2019). A supervisory writ is, among other things, "the general term used in petitioning the court of appeals to exercise its constitutional supervisory authority and in petitioning

[the Wisconsin Supreme Court] to exercise its constitutional superintending authority." Id. at 537. The Supreme Court dismissed the petition on June 13, 2019 because the petitioner had not followed the rule requiring him to first seek the writ in the court of appeals (or explain why it was impractical to do so). Newhouse v. Circuit Court for Kenosha Cty., Case No. 2019AP001053-W (Wis.), available at https://wscca.wicourts.gov/.

On August 27, 2019, an examining psychologist's report was filed by Ana Trepasso, Psy.D. State v. Michael E. Newhouse, Case No. 2016CF1420 (Kenosha County Circuit Court), available at https://wcca.wicourts.gov/. The same day, Attorney Bihler filed a motion to withdraw. Id.

On September 6, 2019, the petitioner filed a petition for a supervisory writ with the Wisconsin Court of Appeals. Newhouse v. Circuit Court for Kenosha County, Case No. 2019AP001654-W (Court of Appeals District 2), available at https://wscca.wicourts.gov/.

At a hearing before Judge Schroeder on September 9, 2019, the court indicated that the examining psychologist's report stated that the petitioner was competent to proceed; all parties agreed. Id. After hearing argument from the parties, Judge Schroeder reinstated the $1,500 cash bond, granted Attorney Bihler's motion to withdraw and set a status conference for October 7, 2019. Id. The petitioner was released and his address changed to 2907 73rd Street in Kenosha. Id. On January 23, 2020, Attorney Joseph Corcoran was appointed to represent the petitioner. Id.

18

The District 2 Court of Appeals denied the petition for a supervisory writ on February 11, 2020. Newhouse v. Circuit Court for Kenosha County, Case No. 2019AP001654-W (Court of Appeals District 2), available at https://wscca.wicourts.gov/.

On July 9, 2020, the petitioner pled guilty to the charge in the criminal case. State v. Newhouse, 2016CF1420 (Kenosha County Circuit Court), available at https://wcca.wicourts.gov/. On August 18, 2020, the court sentenced the petitioner to one year in the Kenosha County Jail with credit for 641 days' sentencing credit—a sentence of time served. Id. The petitioner updated his address to P.O. Box 884, Kenosha, Wisconsin 53141. Id.

## II. Analysis

### A. Standard

Under Rule 12 of the Rules Governing Section 2254 Cases, the Federal Rules of Civil Procedure apply in *habeas* cases. Rule 72(b)(1) allows a district court to refer a case to a magistrate judge, who then "conduct[s] the required proceedings," and "enter[s] a recommended disposition." Fed. R. Civ. P. 72(b)(1). A dissatisfied party has fourteen days from the date the magistrate judge issues the recommendation to file "specific written objections." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. §636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which an objection is made"). The petitioner must specify "each issue for which review is sought," but need not specify "the factual or legal basis of the objection." Johnson v. Zema Sys. Corp., 170 F.3d

19

734, 741 (7th Cir. 1999). The district court must conduct a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." Id. at 739. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." Id. (citations omitted). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." Wees v. Samsung Heavy Indus. Co. Ltd., 126 F.3d 925, 943 (7th Cir. 1997).

      B.    Timeliness of Objection

As noted, Judge Duffin issued his report and recommendation on March 22, 2019; if the petitioner wanted to object, he had to do so within fourteen days of service of the report and recommendation on the petitioner. The clerk's office mailed Judge Duffin's order to the petitioner at the Kenosha County Detention Center; he was still there at that time. Under Fed. R. Civ. P. 6(d), "[w]hen a party may or must act within a specified time after being served and service is made [by mail], 3 days are added after the period would otherwise expires . . . ." Fourteen days from the date of Judge Duffin's order was April 5, 2019; adding three days to that because the clerk's office served the order by mail, the petitioner's objection was due by April 8.

The petitioner dated his objection April 8, 2019 and indicated that he had mailed it by first-class mail on April 9, 2019. Dkt. No. 8 at 9. So the petitioner did not sign his objection until the day it was due and did not mail it until the day after it was due. While technically the objection was not timely

Case 2:19-cv-00345-PP   Filed 03/08/21   Page 20 of 27   Document 14

filed, the court will accept and consider it because the petitioner is representing himself and is not an attorney.

C.  <u>Basis for Objection</u>

 As the court explained above, a party objecting to a magistrate judge's recommendation specifically identify those portions of the magistrate judge's recommendation to which he objects. The court reviews the specifically-identified portions of the recommendation *de novo*—that is, on its own and from scratch—and reviews the rest of the recommendation for clear error. The court has noted that the petitioner's nine-page objection made only a single reference to Judge Duffin's recommendation. The first sentence of the objection says that Judge Duffin "did not view the main date of both Wisconsin and United States Constitutional Law Violations which by words of conduct from Judge Bruce E. Schroeder on 2/4/19 which exude constitutional violations with bias and prejudice." Dkt. No. 8 at 1.

As far as the court can tell, the petitioner objects that Judge Duffin did not analyze Judge Schroeder's conduct at the February 4, 2019 hearing to determine whether that conduct violated the Constitution. So the court must analyze that alleged failure under the *de novo* standard.

D.  <u>Analysis of Objection</u>

The reason Judge Duffin did not analyze the petitioner's allegations that Judge Schroeder's conduct at the February 4, 2019 hearing violated the Constitution is because Judge Duffin concluded that the petitioner had not exhausted his state remedies as to that allegation.

21

"The appropriate vehicle for a state pre-trial detainee to challenge his detention is [28 U.S.C.] §2241." Jackson v. Clements, 796 F.3d 841, 843 (7th Cir. 2015). "Because a pre-trial detainee is not yet 'in custody pursuant to the judgment of a State court,' relief under 28 U.S.C. §2254 is not available." Id. (citing Jacobs v. McCaughtry, 251 F.3d 596, 597-98 (7th Cir. 2001)). But "[t]o be eligible for habeas corpus relief under § 2241, a federal pretrial detainee must first exhaust other available remedies." Alden v. Kellerman, 224 F. App'x 545, 547 (7th Cir. 2007) (citing cases).

Before issuing his March 22, 2019 recommendation, Judge Duffin reviewed the dockets for the Wisconsin Court of Appeals and the Wisconsin Supreme Court, neither of which showed an appeal from the petitioner. This is because, as of March 22, 2019, the petitioner's criminal case was still pending. Although he had had a competency hearing on March 13, 2019, been found incompetent and been remanded to custody for commitment to Mendota, all of that happened *after* the petitioner filed for federal *habeas* relief. The question, form an exhaustion standpoint, is what state remedies were available to the petitioner after Judge Schroeder's February 4, 2019 orders requiring the petitioner to submit to an inpatient competency evaluation, amending the petitioner's bond to $100,000 (from $1,500) and ordering the petitioner taken into custody.

Because the petitioner's criminal case was pending, he had few remedies available to him, but there *were* other remedies. He could have asked his lawyer to challenge Judge Schroeder's rulings—to contest the order for an

22

inpatient competency evaluation or file a motion to reduce the bail. But the petitioner asserts that Attorney Bihler agreed that the petitioner should be evaluated for competency, over the petitioner's objection and the docket supports this assertion. The petitioner appears to believe that he was unlikely to get any help from his lawyer in challenging Judge Schroeder's rulings.

The petitioner could have filed an "interlocutory" appeal of Judge Schroeder's order. Under Wis. Stat. §808.03(2), a party may appeal a non-final order, but the party needs the court's permission to do so. Given the facts the petitioner alleges, it seems unlikely that Judge Schroeder would have given the petitioner leave to file an interlocutory appeal of Judge Schroeder's orders requiring the petitioner to undergo an inpatient evaluation and remanding him into custody. Nonetheless, that was an available remedy that the petitioner could have tried to exhaust and did not.

Finally, the petitioner could have done what he eventually did *after* Judge Duffin issued his recommendation—the petitioner could have filed a petition for a supervisory writ with the Wisconsin Court of Appeals. The Supreme Court has held that a denial of an "extraordinary" writ, such as a supervisory writ, constitutes exhaustion of state remedies only when the denial could be "fairly taken as an adjudication of the merits of claims presented." Pitchess v. Davis, 421 U.S. 482, 488 (1975) (citing *Ex Parte* Hawk, 321 U.S. 114, 116 (1944)). There is no way to know whether the court of appeals would have denied the supervisory writ had the petitioner filed it before seeking relief in federal court or whether if it did deny the writ the denial would constitute an

23

adjudication on the merits. But the fact that the petitioner did not try to obtain a supervisory writ before coming to federal court weighs in favor of a conclusion that he did not exhaust his available state remedies before filing his federal *habeas* petition.

Even if the law does not require a petitioner to file an interlocutory appeal or a petition for a supervisory writ in circumstances such as the ones the petitioner faced in March 2019, the court could not have granted the relief the petitioner requests—an investigation of "all improprieties since 12/27/16," dkt. no. 1 at 12, and an order vacating Case No. 2016CF1420 and dismissing that case with prejudice, dkt. no. 8 at 9. Federal courts are not investigating authorities. Federal courts decide legal disputes. A federal court applies the law to the facts and evidence the parties present. As for vacating or dismissing the state criminal case, when the petitioner filed his federal *habeas* petition in March 2019, his state case was still open and had not been resolved. Under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), federal courts generally are precluded "from intervening in ongoing state criminal prosecutions." <u>Trump v. Vance</u>, ___ U.S. ___, 140 S. Ct. 2412, 2420-21 (2020). The Supreme Court has held that the "normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions," <u>Younger</u>, 401 U.S. at 45—in other words, to abstain. It would have been improper for this court to step in and order the state court to vacate or dismiss the prosecution against the petitioner. Had the court ruled on the petition before the petitioner was sentenced, the court would have had to abstain.

Reviewing *de novo* Judge Duffin's refusal to analyze whether Judge Schroeder's actions violated the Constitution, the court concludes that Judge Duffin correctly refused to conduct that analysis, because it appears the petitioner did not exhaust his state remedies before coming to federal court and because this federal court would have been required to abstain from granting the relief the petitioner requested. As for any portion of Judge Duffin's recommendation to which the petitioner did not specifically object, the court cannot find that Judge Duffin committed clear error.

E.    Mootness

Judge Duffin issued his recommendation, and the petitioner objected to it, almost two years ago. The court deeply regrets that it did not address the objection sooner. The court's heavy case load and congested trial docket created a backlog in cases, including *habeas* cases. The court should have ruled sooner on the petition.

But even if the petitioner had exhausted his state remedies before coming to federal court and even if the court had not been required to abstain from interfering with the state criminal prosecution, the passage of time has rendered the petition moot. If a §2241 petitioner is convicted in state court while the federal *habeas* petition is pending, "the claims concerning his pre-trial confinement [become] moot." Jackson v. Clements, 796 F.3d at 843 (citing Yohey v. Collins, 985 F.2d 222, 228-29 (5th Cir. 1993)). As the court has recounted, on July 9, 2020, Judge Schroeder accepted the petitioner's guilty plea. Id. The court imposed a sentence of one year in the Kenosha County Jail,

25

with credit for time served; the court noted that the petitioner already had served 641 days, which meant that the petitioner had served the entire sentence as of July 9, 2020. Id. The court entered judgment on August 28, 2020. Id. It appears that the petitioner has been out of custody since that time—over seven months. The state docket reflects that his last known address was P.O. Box 884, Kenosha, Wisconsin 53141. The state court did not impose a term of supervision to follow the confinement sentence. Because the petition is moot and because the petitioner is not in custody, the court has no jurisdiction to rule on the merits of his claims.

The court will deny the petition.

F.      Other Arguments

The court also notes, for the sake of thoroughness, that many of the issues the petitioner raised in his objection and his letters to the court—issues about his health conditions, his diet in the jail, his medical treatment or lack of medical treatment—are not grounds for *habeas corpus* relief. A person who believes that jail officials have violated his constitutional rights while he is in custody may seek relief by filing a civil lawsuit under 42 U.S.C. §1983 and requesting damages.

## III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard

26

for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (quotations omitted). The court declines to issue a certificate of appealability, because no reasonable jurist could debate that the petitioner's §2241 petition should be denied.

## IV. Conclusion

The court **CONSTRUES** the petitioner's "Appeal of Habeas Corpus" as an objection to Judge Duffin's report and recommendation and **OVERRULES** the petitioner's objection. Dkt. No. 8.

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 7.

The court **DENIES** the petition for writ of *habeas corpus.* Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 8th day of March, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**